**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| **LAUREN PRICE,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 17-1560** |
| **v.** | * | |
| | * | |
| | * | |
| **NANCY A. BERRYHILL,** | * | |
| **Deputy Commissioner for Operations,** | * | |
| **Social Security Administration,** | * | |
| | * | |
| **Defendant.[1]** | * | |

*************

### MEMORANDUM OPINION GRANTING PLAINTIFF'S
### ALTERNATIVE MOTION FOR REMAND

Plaintiff Lauren Price seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of

a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner")

denying her applications for disability insurance benefits ("DIB") and for Supplemental Security

Income ("SSI") under Titles II and XVI of the Social Security Act.   Before the Court are

Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 20) and

Defendant's Motion for Summary Judgment (ECF No. 21).[2]   Plaintiff contends that the

administrative record does not contain substantial evidence to support the Commissioner's

---

[1] The positions of Commissioner of Social Security and Deputy Commissioner of Social Security are vacant.   Nancy A. Berryhill is performing the delegable duties and functions of the Commissioner of Social Security.  Brief for Respondent at 1 n.1, *Culbertson v. Berryhill*, No. 17-773 (U.S. filed Apr. 5, 2018).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 20) is **GRANTED**.

# I

## Background

Born in 1961, Plaintiff has an associate's degree and previously worked as a paralegal and FOIA specialist. R. at 32-33, 43. Plaintiff protectively filed applications for DIB and for SSI on August 8, 2013, alleging disability beginning on October 1, 2012 (later amended to May 22, 2014), due to a mental disorder and diabetes. R. at 22, 43-44, 182-94, 284. The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 76-121, 124-42. On January 13, 2016, ALJ F.H. Ayer held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified. R. at 40-75. On February 23, 2016, the ALJ issued a decision finding Plaintiff not disabled from the amended alleged onset date of disability of May 22, 2014, through the date of the decision. R. at 19-39. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on April 5, 2017. R. at 1-7, 15-18. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On June 7, 2017, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

### A. State Agency Consultants

On November 14, 2013, a state agency consultant, Nicole Sampson, Ph.D., using the psychiatric review technique ("PRT") under 20 C.F.R. §§ 404.1520a and 416.920a, evaluated Plaintiff's mental impairments under Listing 12.04 relating to affective disorders (R. at 80-81, 90-91). *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04. Dr. Sampson opined that, under paragraph B of the applicable listing, Plaintiff's mental impairments caused her to experience (1) moderate restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration. R. at 80, 90. Dr. Sampson did not find evidence to establish the presence of the criteria under paragraph C of the applicable listing. R. at 80, 90. Dr. Sampson thus assessed Plaintiff's mental residual functional capacity ("RFC") and opined that she was moderately limited in her ability to (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) interact appropriately with the general public; (5) accept instructions and to respond appropriately to criticism from supervisors; and to (6) get along with co-workers or peers without distracting them or exhibiting behavioral extremes. She otherwise was not significantly limited. R. at 81-83, 91-93. Dr. Sampson opined that Plaintiff "can execute 1-2 step instructions. She can focus and concentrate for 2 hour periods to complete a normal 8 hour work day. She can complete a normal work week despite her depressive symptoms." R. at 82, 92.

On January 30, 2014, another state agency consultant, Nancy Heiser, Ph.D., again used the PRT to evaluate Plaintiff's mental impairments under Listing 12.04. R. at 103, 114. Dr. Heiser opined that, under paragraph B of the applicable listing, Plaintiff's mental impairments caused her to experience (1) moderate restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration. R. at 103, 114. Dr. Heiser did not find evidence to establish the presence of the criteria under paragraph C of the applicable listing. R. at 103, 114. Dr. Heiser thus assessed Plaintiff's mental RFC and opined that she was moderately limited in her ability to (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) interact appropriately with the general public; (5) accept instructions and to respond appropriately to criticism from supervisors; and to (6) get along with co-workers or peers without distracting them or exhibiting behavioral extremes. Plaintiff otherwise was not significantly limited. R. at 104-06, 115-17. Like Dr. Sampson, Dr. Heiser opined that Plaintiff "can execute 1-2 step instructions. She can focus and concentrate for 2 hour periods to complete a normal 8 hour work day. She can complete a normal work week despite her depressive symptoms." R. at 105, 116.

B.    **Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in the ALJ's decision:

> Upon filing for benefits, [Plaintiff] alleged she was unable to work due to a mental disorder and diabetes [R. at 283-91]. At the hearing, her representative alleged [Plaintiff] could not do her past work due to difficulties ambulating, social isolation, and only bathing twice a month. He further stated she had daytime

sleepiness from either her depression or her sleep apnea. The representative also clarified that [Plaintiff] injured her leg in a cave in 2010 and broke her left ankle in 2015.

R. at 28; *see* R. at 43-52, 57-74.

## C.  VE Testimony

The VE testified that a hypothetical individual with Plaintiff's same age, education, and work experience and with the RFC outlined below in Part III could not perform Plaintiff's past relevant work but could perform the light, unskilled jobs of router, non-postal mail clerk, or office helper.[3]  R. at 52-54.  An additional limitation of a sit-stand option would eliminate the non-postal mail clerk position, but such a hypothetical individual could work instead as a sorter. R. at 55-56.  No work would be available to such a hypothetical individual if he or she could not perform simple, one- to four-step, routine, and repetitive tasks.  R. at 56-57.  Further, a person with a 15% to 18% loss of productivity from being off task would not be able to maintain work. R. at 56.  A person missing two days per month at work would not be able to remain employable. R. at 56.  With the exception of her testimony regarding a sit-stand option, absenteeism, and productivity levels, the VE's testimony was consistent with the *Dictionary of Occupational Titles*[4] (the "DOT").  R. at 54-57.

---

[3] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* §§ 404.1567(b), 416.967(b).

[4] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

# III

## Summary of ALJ's Decision

On February 23, 2016, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the amended alleged onset date of disability of May 22, 2014; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as a router, non-postal mail clerk, or office helper. R. at 24-34. The ALJ thus found that she was not disabled from May 22, 2014, through the date of the decision. R. at 34.

In so finding, the ALJ found that, with regard to concentration, persistence, or pace, Plaintiff had moderate difficulties. R. at 26.

> [Plaintiff] reported to the State agency that she lived with family, lay in bed, and watched television. Her son completed most of the household chores and cared for the dog. She used alarms on her iphone to remind her to perform personal care and take her medication. [Plaintiff] prepared simple meals, and she had no energy to get dressed or clean her home. She paid bills, counted change and managed her bank account. [Plaintiff] indicated she could pay attention for 15 minutes, and did poorly with spoken and written ones [R. at 223-33, 257-67]. A review of her psychological treatment records indicated only moderate difficulties in concentration, persistence and pace. [Plaintiff] reported fatigue, a depressed and anxious mood and some hallucinations and paranoia. However, clinical signs on mental status exam generally noted she was cooperative, with a depressed, anxious or irritable mood, but normal speech, normal thought processes, adequate intellect and good memory [R. at 463-516, 556-68].

R. at 26.

> The ALJ then found that Plaintiff had the RFC
>
> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10

pounds, stand and/or walk six hours in an eight-hour workday, and sit for a total of six hours in an eight-hour workday. [Plaintiff] can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and never climb ladders, ropes and scaffolds. She is limited to performing no more than simple one to four step, routine, repetitive tasks in a work environment where there would only be occasional contact with coworkers and supervisors, and no contact with the general public and which would not require fast pace or production quotas.

R. at 27.

The ALJ considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. at 28.

Although [Plaintiff] has described daily activities, which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding [Plaintiff] disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if [Plaintiff's] daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to [Plaintiff's] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, [Plaintiff's] reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

[Plaintiff] did not allege debilitating side effects from medication. Nor does a review of the record indicate any reported side effects from medication affecting [Plaintiff's] ability to work.

R. at 30.

The ALJ gave

great weight to the opinions of Nicole Sampson, Ph.D., and Nancy Heiser, Ph.D., who reviewed the record for the State agency. . . . These opinions are given great weight, although they predate [Plaintiff's] amended onset date. They are consistent with [Plaintiff's] psychological treatment of record, which was minimal and conservative for the relevant period.

R. at 31.

# IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[6] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 3-14,

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

ECF No. 20-1. Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work. *Id.* at 5. In particular, she contends that, although the ALJ found that she had moderate difficulties with regard to concentration, persistence, or pace, the ALJ failed to include any limitation on concentration, persistence, or pace in the RFC assessment. *Id.* at 13-14. Rather, according to Plaintiff, the ALJ limited her to the performance of simple, one- to four-step, routine, and repetitive tasks with no fast pace or production quotas. *Id.* at 13 (citing R. at 27). Plaintiff also asserts that the ALJ failed to address her borderline age, the evidence of her upper-extremity impairments, and any limitations on her ability to reach, handle, finger, or feel objects. *Id.* at 9-13. For the reasons discussed below, the Court remands this case for further proceedings.

## A. Plaintiff's Moderate Difficulties with Concentration, Persistence, or Pace

The Court first turns to Plaintiff's argument that the ALJ failed to include any limitation on her concentration, persistence, or pace in the RFC assessment. *Id.* at 13-14. SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are

'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)).  Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177).  The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

The Fourth Circuit further held in *Mascio* that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).  "[T]he ability to perform simple tasks differs from the ability to stay on task.  Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.*  The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC.  *Id.*  In other words, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary."

*Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015).

Here, contrary to Plaintiff's assertion, the ALJ's limiting Plaintiff's RFC to simple tasks in a work environment that "would not require fast pace or production quotas" (R. at 27; *see* R. at 52) accounts for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. *See, e.g.*, *Rayman v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-3102, 2015 WL 6870053, at *3 (D. Md. Nov. 6, 2015) ("While limitation to unskilled work alone is insufficient under *Mascio*, here the ALJ included other limitations that clearly account for [the claimant's] moderate limitation in concentration, persistence, or pace. Specifically, the limitation to an environment with few changes and no production quotas assures that [the claimant] is not required to produce any particular volume of work-product and is not distracted or required to adapt to changes in the workplace. Thus, the ALJ accounted for any time that [the claimant] would be off-task due to his limited ability to maintain focus. Accordingly, I find no error warranting remand under *Mascio*."); *see also Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017). The ALJ failed, however, to explain how, despite Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace, she could remain on task or be productive for more than 85% of an eight-hour workday. The ALJ "must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (alteration in original) (quoting *Monroe*, 826 F.3d at 189). In particular, the ALJ "must build a logical bridge between the limitations he finds and the VE evidence relied upon to carry the Commissioner's burden at step five in finding that there are a significant number of jobs available to a claimant." *Brent v. Astrue*, 879 F. Supp. 2d 941, 953 (N.D. Ill. 2012) (citing *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)). An

ALJ's failure to do so constitutes reversible error. *See Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017). In short, the inadequacy of the ALJ's analysis frustrates meaningful review. *See Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017) (remanding because, *inter alia*, ALJ did not build accurate and logical bridge between claimant's moderate difficulties in various functional areas and ALJ's finding that claimant would not be off task more than 10% of workday); *Ashcraft v. Colvin*, No. 3:13-cv-00417-RLV-DCK, 2015 WL 9304561, at *11 (W.D.N.C. Dec. 21, 2015) (remanding under fourth sentence of 42 U.S.C. § 405(g) because court was unable to review meaningfully ALJ's decision that failed to explain exclusion from RFC assessment an additional limitation of being 20% off task that VE testified would preclude employment). Remand under the fourth sentence of 42 U.S.C. § 405(g) thus is appropriate. *See Mascio*, 780 F.3d at 636.

**B.      ALJ's Assessment of Plaintiff's RFC**

Plaintiff further argues that the ALJ failed to include in the RFC assessment a limitation to performing one- and two-step tasks, despite giving "great weight" to the opinions of the state agency consultants (R. at 31). Pl.'s Mem. Supp. Mot. Summ. J. 6-9, ECF No. 20-1. As noted in Part IV above, the Commissioner bears the burden at the final step of the five-step sequential evaluation process used to evaluate a claimant's disability claim. *Pearson*, 810 F.3d at 207. To determine whether sufficient other work exists for the claimant in the national economy, the ALJ relies primarily on the DOT. *Id.* The ALJ may also use a VE "to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy." *Id.* SSR 00-4p requires that the ALJ inquire, on the record, whether the VE's testimony conflicts with the DOT, and also requires that the ALJ elicit a reasonable explanation for and resolve conflicts between

the VE's testimony and the DOT. *Id.* at 207-08 (citing SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000), at *2). The ALJ must, by determining if the VE's explanation is reasonable, resolve conflicts before relying on the VE's evidence to support a determination or decision about whether the claimant is disabled. *Id.* at 208 (citing same).

An ALJ has not fulfilled his affirmative duty merely because the VE responds "yes" when asked if his testimony is consistent with the DOT. *Id.* Rather, the ALJ independently must identify apparent conflicts between the VE's testimony and the DOT. *Id.* at 209. "[I]n many cases, testimony may only *appear* to conflict with the [DOT], and the [VE] may be able to explain that, in fact, no conflict exists." *Id.* A VE's testimony that apparently conflicts with the DOT "can only provide substantial evidence if the ALJ has received this explanation from the expert and determined that the explanation is reasonable and provides a basis for relying on the testimony rather than the [DOT]." *Id.* at 209-10 (citing SSR 00-4p, 2000 WL 1898704, at *2).

"In order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments." *Brinkley v. Astrue*, 695 F. Supp. 2d 269, 282 (D.S.C. 2010) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). According to the DOT, the jobs of router and office helper require a reasoning level of two. DOT 222.587-038, 1991 WL 672123 (listed as "router"); DOT 239.567-010, 1991 WL 672232 (listed as "office helper"). According to Appendix C of the DOT, 1991 WL 688702, level-two reasoning skills are defined as the skills to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." Level-one reasoning skills are defined as the skills to "[a]pply commonsense understanding to carry out simple one- or two-step

instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."  *See Hernandez v. Astrue*, No. 1:09-CV-1805 SKO, 2010 WL 5113103, at *4 (E.D. Cal. Dec. 9, 2010).   "[R]easoning levels of two are consistent with limitations to simple instructions and routine tasks."  *Davis v. Comm'r of Soc. Sec.*, Civil No. SAG-11-2779, 2013 WL 153594, at *2 (D. Md. Jan. 14, 2013); *see Dillon v. Astrue*, Civil Action No. TMD 08-2597, 2011 WL 337334, at *5 (D. Md. Jan. 31, 2011) (performance of jobs with reasoning level of two is not inconsistent with limitation to simple, routine, repetitive tasks); *accord Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that "level-two reasoning appears more consistent with claimant's RFC" to "simple and routine work tasks").  Further, the job of non-postal mail clerk (DOT 209.687-026, 1991 WL 671813 (listed as "mail clerk")) requires a reasoning level of three,[7] which this Court almost invariably has determined is also consistent with a limitation to "simple, routine, and repetitive tasks."  *See, e.g., Johnson v. Comm'r, Soc. Sec. Admin.*, Civil Action No. ADC-17-1819, 2018 WL 2248412, at *11 (D. Md. May 16, 2018) (citing cases).  *But see Halpern v. Colvin*, Civil No. TDC 14-2538, 2016 WL 429965, at *9 (D. Md. Feb. 4, 2016) (reporting that limitation to simple instructions and no complex tasks apparently conflicts with demands of level-three reasoning (citing *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015); *Hackett*, 395 F.3d at 1176)), *subsequently aff'd mem. per curiam sub nom. Halpern v. SSA*, 676 F. App'x 210 (4th Cir. 2017).  Thus, a limitation to simple, one- to four-step, routine, and repetitive tasks does not conflict with the performance of at least two of the three light-level jobs identified by the VE at the hearing.  *See Kim v. Colvin*, No. CV 13-01841-JEM, 2013 WL 6670335, at *8 (C.D. Cal. Dec. 18, 2013) (finding that

_____

[7] Level-three reasoning requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations."  DOT app. C, 1991 WL 688702.

limitation to simple, repetitive, three- and four-step tasks is consistent with reasoning level two (citing, *inter alia*, *Chavez v. Astrue*, 699 F. Supp. 2d 1125, 1136 n.10 (C.D. Cal. 2009))).

The VE in this case testified that an individual unable to perform simple, one- to four-step, routine, and repetitive tasks would not be able to work. R. at 56-57. The Fourth Circuit has held, moreover, that "there is an apparent conflict between an RFC that limits [a claimant] to one-to-two step instructions and GED Reasoning Code 2, which requires the ability to understand detailed instructions." *Henderson v. Colvin*, 643 F. App'x 273, 277 (4th Cir. 2016) (per curiam); *see Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015); *Carpenter v. Colvin*, No. 1:13-cv-01637 (CKK/GMH), 2016 WL 946975, at *7 (D.D.C. Feb. 24, 2016) ("The ALJ's instruction that the hypothetical plaintiff was limited to 'simple, routine, repetitive, one to two step tasks' conflicts with DOT Reasoning Level Two, which is required for both jobs identified in the VE's testimony."), *report and recommendation adopted*, Civil Action No. 13-01637 (CKK/GMH), 2016 WL 953216 (D.D.C. Mar. 14, 2016). Despite affording great weight to the opinions of Drs. Sampson and Heiser, who opined that Plaintiff's mental limitations restricted her to performing one- and two-step tasks (R. at 82, 92, 105, 116), the ALJ's "RFC and hypothetical here are not supported by substantial evidence because it is not clear whether the omission of any limitation to one or two-step jobs was intentional or not." *Harden v. Comm'r of Soc. Sec.*, Civil Action No. 13-906, 2014 WL 4792294, at *4 (W.D. Pa. Sept. 24, 2014).

> While the ALJ was by no means required to simply adopt all of the limitations found by the state reviewing agent, [the ALJ] was required to explain [the ALJ's] basis for rejecting them if [the ALJ] chose to do so, particularly in light of the fact that [the ALJ] expressly gave [great] weight to this opinion in formulating the RFC and hypothetical.

*Id.* "Where, as here, there is potentially conflicting evidence in the record, the ALJ must explain which evidence [the ALJ] accepts and rejects and the reasons for [the ALJ's] determination." *Id.* at *5. "The state agency psychologist[s], whose [opinions were] given [great] weight, offered [opinions] of a restriction not included in the RFC or hypothetical that could possibly conflict with the VE's opinion as to the positions that Plaintiff could perform." *Id.* "The ALJ is not necessarily obligated to accept this additional limitation, but [the ALJ] cannot ignore it. It is the need for further explanation that mandates the remand on this issue." *Id.* "Likewise, while the VE's opinion may remain unchanged even with this additional restriction, that is left for the VE to decide." *Id.*; *see Bush v. Colvin*, Civil Action No. 15-718, 2016 WL 1730534, at *1-2 (W.D. Pa. May 2, 2016); *Bobbitt v. Colvin*, No. 03:13-CV-01320-HZ, 2014 WL 2993738, at *8-10 (D. Or. July 1, 2014). For these reasons, the ALJ's failure to address the state agency consultants' opinions regarding Plaintiff's ability to execute one- to two-step instructions is not harmless error, and remand is warranted.

Defendant points out, however, that the jobs identified by the VE are "unskilled" with an SVP (or specific vocational preparation) level of two (Def.'s Mem. Supp. Mot. Summ. J. 13-15, ECF No. 21-1). *See* SSR 00-4p, 2000 WL 1898704, at *3. However,

> a limitation to unskilled work, as used by the DOT and the Commissioner's regulations, does not necessarily conflate with jobs that involve only simple one- to two-step instructions. These are two separate vocational considerations. Defining particular jobs as "unskilled" speaks more to the issue of the level of vocational preparation necessary to perform the job rather than the issue of the job's simplicity, "which appears to be more squarely addressed by the [reasoning level] ratings."

*Hardy v. Colvin*, Civil Action No. TMD 11-02793, 2013 WL 4478025, at *4 (D. Md. Aug. 19, 2013) (alteration in original) (quoting *Hall-Grover v. Barnhart*, No. 03-239-P-C, 2004 WL 1529283, at *4 (D. Me. Apr. 30, 2004)).

In short, the Fourth Circuit has "held that '[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.'" *Monroe*, 826 F.3d at 189 (alteration in original) (quoting *Radford*, 734 F.3d at 295). Because the inadequacy of the ALJ's analysis here again frustrates meaningful review, remand is appropriate for this reason as well. *See Mascio*, 780 F.3d at 636.

Plaintiff also contends that the ALJ failed to address her borderline age, the evidence of her upper-extremity impairments, and any limitations on her ability to reach, handle, finger, or feel objects. Pl.'s Mem. Supp. Mot. Summ. J. 9-13, ECF No. 20-1. Because this matter is being remanded on other grounds and because Plaintiff will be in the higher age category when her case is considered on remand, the Court need not address these remaining issues. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003); *Lathan v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-15-444, 2016 WL 1056562, at *4 (D. Md. Mar. 16, 2016); *Riden-Franklin v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-10-2298, 2013 WL 150012, at *2 (D. Md. Jan. 11, 2013).

**VII**

**Conclusion**

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 21) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 20) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 20) is **GRANTED**. Defendant's final decision is **REVERSED** under the fourth sentence of 42 U.S.C. § 405(g). This matter is **REMANDED** for further proceedings consistent with this opinion. A separate order will issue.

Date: June 26, 2018 _____/s/_____

Thomas M. DiGirolamo
United States Magistrate Judge